IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. JANICE MAKELA,

        *Plaintiff*,

   v.

APEX HOSPICE AND PALLIATIVE
CARE, INC.

        *Defendant.*

Case No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, Dr. JANICE MAKELA, ("Plaintiff") or ("Dr. Makela") by her attorneys and for her complaint against the Defendant APEX HOSPICE AND PALLIATIVE CARE INC. ("Apex") states as follows:

**PARTIES**

1. Defendant Apex is an Illinois corporation that owned, operated, maintained and/or managed an entity which provided hospice care to patients in Illinois.

2. Plaintiff is Defendant's former Hospice Medical Director.

**JURISDICTION AND VENUE**

3. Subject matter jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by 31 U.S.C. § 3729. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this Judicial District as Plaintiff worked in this Judicial District.

5. This Court has personal jurisdiction over Defendant because, during the relevant time period, it did business in Illinois.

## FACTUAL ALLEGATIONS

**Contractual-Related Allegations:**

6. Plaintiff began employment with the Defendant on or about February 9, 2024.

7. Prior to becoming an employee, the parties entered into an Employment Agreement (a copy of which is attached as Exhibit 1). Pursuant to the terms of the Employment Agreement, Plaintiff was employed as a Hospice Medical Director.

8. Pursuant to the terms of the Employment Agreement, Dr. Makela was to be provided with written notice of termination at least 90 days prior to the date on which termination is to be effective if the termination was without cause. (Ex. 1, ¶4.3). Similarly, Dr. Makela was to be provided with written notice of termination at least 30 days with cause prior to the date on which termination was to be effective. (*Id.*).

**Hospice Fraud Violations**

9. Many of Defendant's patients were covered by Medicare or Medicaid insurance and, thus, the government was responsible for paying Apex for the patients' hospice care.

10. To curtail unnecessary healthcare expense and treatment, federal and state governments set forth certain standards and requirements before a patient is eligible to be admitted to hospice care and have the claim approved for payment. These requirements include, among other things, that the patient be given a diagnosis of a terminal condition and that the patient elect hospice care.

11. The Centers for Medicare and Medicaid Services has warned of fraud among hospice providers. As it recently explained:

> Unfortunately, hospices are profiting from fraud at the expense of beneficiaries far too often. Recent media reporting, and research by CMS, have identified instances of hospices certifying patients for hospice care when they were not terminally ill and providing little to no services to patients. [1]

12. Pursuant to Medicare guidelines, any patient admitted to hospice must have two physicians certified that they qualify for hospice. *See* Medicare Benefits Policy Manual § 10 (available at https://www.medicare.gov/Pubs/pdf/02154-medicare-hospice-benefits.pdf (last accessed July 18, 2024)). One of these doctors must be the Medical Director (or a physician designee of the Medical Director). *Id.*; 42 CFR § 418.20, 42 CFR § 418.22(c). For re-certification, the Medical Director (or a physician designer of the Medical Director) must certify that they still qualify for hospice. Medicare Benefits Policy Manual at §20; 42 CFR § 418.21; 42 CFR § 418.22(c). Re-certifications are required after the initial 90-day certification period. 42 CFR § 218.21. The first re-certification period is an additional 90-days, and then the patient must be recertified every 60 days thereafter. *Id.* Medical records supporting the prognosis must accompany the certification. 42 CFR § 418.22(b).

13. Without these certifications, and an acknowledgement that the patient elects hospice for their care, a patient who participates in Medicare cannot be enrolled in hospice, and the hospice cannot bill for any services provided. Medicare Benefits Policy Manual at § 10.

14. Similarly, for patients receiving benefits under Medicaid, to have hospice care paid for by Medicaid, a patient must have received a diagnosis of a terminal illness certified by a physician. Handbook for Hospice Agencies, Chapter K-200, § K-211.1 (available at https://hfs.illinois.gov/content/dam/soi/en/web/hfs/sitecollectiondocuments/hospicehandbook.pdf

---

[1] https://www.cms.gov/blog/cms-taking-action-address-benefit-integrity-issues-related-hospice-care (last visited July 18, 2024)

(last accessed July 18, 2024)), re-certification is required once after the 90-day initial certification period for a duration of 90 days and then every 60 days thereafter. *Id.* at § 211.2.

15. In order to certify that the patient has a terminal illness, Medicare has set forth many factors that a physician must consider before certifying that the patient suffers from a terminal illness. Medicare refers to these factors as the "Local Coverage Determination" or "LCD."[2] The LCD helps guide physicians in making the decision about whether, for a particular illness, a prognosis that the illness is "terminal" is justified. *Id.*

16. Collectively, the aforementioned qualifications set forth in paragraphs 12 through 15 are referred to herein as the "Hospice Medicare Requirements".

17. Dr. Makela is a physician in good-standing, licensed in Illinois and certified by the American Board of Internal Medicine in Hospice and Palliative Medicine since 2008. She has practiced hospice care for 18 years. As such, as Medical Director, Dr. Makela is professionally qualified to make determinations about hospice eligibility.

18. In carefully reviewing each patient's file, Dr. Makela was fulfilling Apex's obligation to the government to not improperly bill for patients who were ineligible for hospice pursuant to Hospice Medicare Requirements and to assure the patient received proper care. In the alternative, Dr. Makela had a good faith belief that Apex was attempting to bill Medicare for patients who did not meet Hospice Medicare Requirements.

19. Apex retaliated against Dr. Makela for refusing to permit Apex to bill patients for ineligible hospice services pursuant to Hospice Medicare Requirements. The reason for the

---

[2] cms.gov/medicare-coverage-database/view/lcd.aspx?LCDId=33393&ContrId=272&ContrVer=1&CntrctrSelected=272*1&Cntrctr=272&DocType=2

retaliation was because if Apex can widen the net of eligible patients (i.e., ignore the Hospice Medicare Requirements), then it can bill the government more money.

20. Apex's actions not only were designed to overbill the government, but it also risked patient care and safety "because patients who enroll in the [hospice] service forgo curative care [and therefore] hospice may harm patients who aren't actually dying." *Endgame: How the Visionary Hospice Movement because a For-Profit Hustle.*[3]

21. Makela was terminated because she opposed Defendant's efforts to admit ineligible patients for hospice and because she was carefully reviewing the medical records to ensure that Apex was not submitting claims for payment for ineligible patients pursuant to Hospice Medicare Requirements and because she repeatedly opposed Defendant's efforts to admit patients who did not meet the standards set forth by Medicare or Medicaid.

22. In March 2024, Dr. Makela repeatedly opposed Defendant's efforts to admit ineligible patients who did not meet the standards set forth in the Hospice Medicare Requirements. Shortly thereafter, Apex terminated Dr. Makela on March 22, 2024, claiming pretextually that she was not a good fit with the Apex culture and because she was taking too long reviewing patient files before admission to hospice.

23. The reasons Defendant provided for termination were pretextual. Apex fired Dr. Makela for refusing to violate Medicare's rules regarding the admissions of patients in violation of Hospice Medicare Requirements.

24. Dr. Makela was not given notice of termination as articulated in the Employment Agreement. On March 22, 2024, Dr. Makela was terminated without notice.

---

[3] https://www.propublica.org/article/hospice-healthcare-aseracare-medicare (July 18, 2024)

## **COUNT I – BREACH OF CONTRACT**

25. Plaintiff re-alleges and incorporate by reference paragraphs 1 through 24 as if fully set forth herein.

26. The Employment Agreement is a legally binding and enforceable agreement.

27. Plaintiff has performed all obligations under the Employment Agreement.

28. Apex has breached the Employment Agreement by failing to provide Plaintiff with proper notice of termination.

29. As a direct and proximate result of Apex's conduct, Plaintiff has suffered damages including lost wages and lost employee benefits.

## **COUNT II –ILLINOIS WAGE PAYMENT AND COLLECTION ACT**

30. Plaintiff incorporates by reference and realleges the allegations set forth in paragraphs 1 through 29 as if fully set forth herein.

31. At all relevant times, Apex was the Plaintiff's "employer" as that term is defined by the IWPCA, 820 ILCS 115/2

32. At all relevant times, Plaintiff was Apex's "employee" as that term is defined under the IWPCA, 820 ILCS 115/2.

33. Within the meaning of the IWPCA, Defendant had an agreement with Plaintiff to provide Plaintiff with 90 days' prior notice of a termination.

34. Defendants violated the IWPCA by terminating Plaintiff without providing the required notice.

35. Defendants' failure to comply with the IWPCA was reckless or willful.

36. As a direct result of Defendants' actions in this regard, Plaintiff suffered damages

37. Plaintiff is entitled to recover compensation for the remaining compensation owed to her under the contract, all damages as to which she is entitled, statutory damages pursuant to the IWPCA and attorneys' fees and costs.

## COUNT III - FALSE CLAIMS ACT

38. Plaintiffs hereby alleges and incorporates Paragraph 1 through 29 of this Complaint, as if fully set forth herein.

39. The False Claims Act provides that no person shall present a false or fraudulent claims for payment or approval from a government fund or make a false or fraudulent claim. 31 U.S.C. §3729(a).

40. 31 U.S.C. §3730(h) provides that an employer may not discharge, demote, suspend, threaten, harass or in any other manner discriminate against in the terms and conditions of employment of any employee because the employee was furthering the aims of the False Claims Act or because the employee attempted to stop a violation of the False Claims Act.

41. Dr. Makela was terminated because she opposed and refused to participate in Defendant's violations of the False Claims Act and specifically the admission of patients in violation of Hospice Medicare Requirements.

42. As such, Plaintiff seeks damages including two times her backpay, interest on the backpay, all damages as to which she is entitled, compensatory and punitive damages and attorneys' costs and fees.

## COUNT IV – ILLINOIS WHISTLEBLOWER ACT

43. Plaintiffs hereby alleges and incorporates Paragraph 1 through 42 of this Complaint, as if fully set forth herein.

7

44. The Illinois Whistleblower Act provides that no employer shall retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation. 740 ILCS 174/20.

45. Many of Defendant's patients were covered by Medicare or Medicaid and, thus, the government was responsible for paying Apex for the patients' hospice care.

46. Federal and State government set forth certain standards and requirements, including those set forth in the Hospice Medicare Requirements, before a patient is eligible to be admitted to hospice care and have the claim approved for payment.

47. Dr. Makela was terminated because she opposed and refused to participate in Defendant's violations of the admission of patients in violation of Hospice Medicare Requirements.

48. As such, Plaintiff seeks damages including backpay, interest on the backpay, and all other damages as to which she is entitled including attorneys' costs and fees.

## **COUNT V – COMMON LAW RETALIATORY DISCHARGE**

49. Plaintiff hereby realleges and incorporates paragraphs 1 through 48 of the Complaint, as if fully set forth herein.

50. The public policy of Illinois is to be truthful to the government when reporting medical billing codes to Medicare and Medicaid and not to improperly admit patients for healthcare treatment as to which they are not eligible, or to subject them to unnecessary medical care in hospice because doing so is dangerous.

51. Plaintiff refused to certify or recertify patients for hospice care unless she was satisfied that the patient qualified for such services under the guidelines propounded by

Medicare or Medicaid. Specifically, she refused to violate the Hospice Medicare Requirements as Apex wanted her to do. This was a protected activity.

52. As a direct and proximate cause of her exercising her rights, Plaintiff was terminated.

53. Defendant acted with malice and deliberately to terminate Plaintiff's employment for exercising her right to be truthful to the government.

54. As such, Plaintiff requests compensatory damages in an amount to be calculated at trial, lost wages, including future lost wages; punitive damages; attorney fees and costs; and such other and further relief as this Court deems appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully Submitted,

By: /s/ David J. Fish
One of the Plaintiff's attorneys

David Fish
John Kunze
Workplace Law Partners, PC
155 N Michigan Avenue, Suite 719
Chicago, IL 60601
Telephone: 312-861-1800
dfish@fishlawfirm.com
kunze@fishlawfirm.com
docketing@fishlawfirm.com