THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. JANICE MAKELA, ) | |
| ) | |
| *Plaintiff*, ) | No. 24 C 06920 |
| v. ) | |
| ) | Chief Judge Virginia M. Kendall |
| APEX HOSPICE AND PALLIATIVE CARE, ) | |
| INC., ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

This employment dispute arises from Plaintiff Dr. Janice Makela's tenure as hospice medical director at Defendant Apex Hospice and Palliative Care, Inc. ("Apex"), an Illinois-based hospice care provider. Makela alleges that after she refused to certify that certain prospective patients were eligible for hospice care under Medicare and Medicaid in accordance with federal law, Apex unlawfully retaliated against her and terminated her. Makela brings statutory and common law claims, including breach of contract, violations of the Illinois Wage Payment and Collection Act (IWPCA), retaliation under the False Claims Act (FCA), retaliation under the Illinois Whistleblower Act (IWA), and retaliatory discharge under Illinois common law. Pending before the Court is Apex's Motion to Dismiss all claims for failure to state a claim. (Dkt. 14). For the reasons below, the Court denies Apex's Motion to Dismiss [14].

**BACKGROUND**

As a hospice care provider to patients insured under Medicare and Medicaid, Apex must comply with federal regulations that require certification of a patient's terminal illness in order for a patient to be eligible for hospice care under Medicare and Medicaid. (Dkt. 1 ¶ 9); 42 C.F.R. §§ 418.20, 418.22 (outlining the certification requirements under Medicare); *see* Ill. Admin. Code

1

tit. 89, § 140.469(b) (incorporating Medicare's certification requirements for hospice care eligibility into Illinois's state-run Medicaid program). Without this certification, a patient is not eligible to elect hospice care under Medicare or Medicaid, and Apex cannot submit a claim for payment to the federal government. 42 C.F.R. §§ 418.20, 418.22(a)(2).

Makela is a physician licensed in Illinois and certified by the American Board of Internal Medicine in Hospice and Palliative Medicine; she has practiced hospice care for 18 years. (Dkt. 1 ¶ 17). On February 9, 2024, Makela assumed the role of hospice medical director at Apex. (*Id.* at ¶ 6). In that role, federal regulations required Makela to certify that a prospective patient had a terminal illness, in order for a patient to be eligible for hospice care under Medicare and Medicaid and for Apex to be able to submit a claim for payment to the federal government. (*Id.* at ¶¶ 17–18); 42 C.F.R. §§ 418.20, 418.22(a)(2), 418.22(c)(1)(i), 418.102. Makela alleges that, as medical director, she "carefully review[ed] each patient's file" to confirm their eligibility for hospice care under Medicare. (Dkt. 1 ¶ 18). And in March 2024, she "repeatedly opposed [Apex's] efforts to admit ineligible patients who did not meet" the federal standards governing eligibility for hospice care under Medicare. (Dkt. 1 ¶¶ 21–22). Specifically, Makela "refus[ed] to permit Apex to bill" the federal government for hospice care that would have been provided to ineligible patients by "refus[ing] to certify or recertify patients for hospice care unless she was satisfied that the patient qualified for such services" under federal law. (*Id.* at ¶¶ 19, 51). Moreover, Makela asserts that Apex was engaged in "hospice fraud," (*Id.* at 2), and that she "had a good faith belief that Apex was attempting to bill Medicare for patients who did not meet" the eligibility criteria under federal law because doing so would enable Apex to "widen the net of eligible patients" and "bill the government more money." (*Id.* at ¶¶ 18–19).

2

On March 22, 2024, Apex terminated Makela without notice, ending her tenure as medical director just 43 days after she started in the role. (*Id.* at ¶¶ 6, 22, 24). Apex told Makela she was terminated because "she was not a good fit with the Apex culture and because she was taking too long reviewing patient files before admission to hospice." (*Id.* at ¶ 22). Makela alleges that Apex's stated reasons for her termination were pretextual, and that her termination was unlawful retaliation for her repeated opposition to Apex's efforts to admit patients ineligible for hospice and bill the federal government in connection with such patients, her repeated refusal to certify patients that were ineligible for hospice care under Medicare, and her commitment to "carefully reviewing the medical records to ensure that Apex was not submitting claims for payment for ineligible patients." (*Id.* at ¶¶ 19, 21–23, 51).

Makela's employment agreement with Apex required Apex to provide at least 90 days' notice prior to termination without cause and at least 30 days' notice prior to termination with cause. (Ex. 1, Dkt. 1-1 ¶ 4.3 (Employment Agreement)). The employment agreement provides for an initial term of one year with yearly renewal, unless terminated sooner in accordance with the agreement. (*Id.* at ¶ 4.1). Makela alleges Apex breached the employment agreement by failing to provide notice of her termination. (Dkt. 1 ¶ 28).

Based on these facts, Makela brings several statutory and common law claims, including breach of contract (Count One), violation of the Illinois Wage Payment and Collection Act (IWPCA) (Count II), retaliation under the False Claims Act (FCA) (Count III), retaliation under the Illinois Whistleblower Act (IWA) (Count IV), and retaliatory discharge under Illinois common law (Count V). (Dkt. 1 ¶¶ 25–54). Apex moves to dismiss all claims for failure to state a claim, and alternatively for the Court to decline to exercise supplemental jurisdiction over the state law claims in the event Makela's federal claim under the FCA is dismissed. (Dkt. 14 at 1–2).

**LEGAL STANDARD**

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the complaint's well-pleaded factual allegations as true, "drawing all reasonable inferences in [the plaintiff's] favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). The Court "also consider[s] any documents attached to and integral to the complaint as part of the [complaint's] allegations." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[,]" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And contrary to Apex's contention, retaliation claims under the FCA are not subject to Rule 9(b)'s heightened pleading standard for fraud claims. *United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*, 44 F.4th 646, 661–62 (7th Cir. 2022).

## DISCUSSION

Apex moves to dismiss all of Makela's claims for failure to state a claim. (Dkt. 14 at 1–2). Alternatively, Apex moves the Court to decline to exercise supplemental jurisdiction over the state law claims in the event Makela's federal claim under the FCA is dismissed. (Dkt. 14 at 1–2).

### I. Retaliation under the False Claims Act (Count III)

The FCA creates a cause of action for retaliation based on an employee's lawful efforts to prevent a violation of the statute. 31 U.S.C. § 3070(h)(1). Specifically, under 31 U.S.C. § 3070(h)(1), an employee is entitled to relief if she "is discharged, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of . . . efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3070(h)(1). Violations of subchapter III include violations of § 3729, which include "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" and "knowingly mak[ing] . . . a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B). To prevail at the motion to dismiss stage, a terminated employee must allege facts that support the inference that (1) she "engaged in protected conduct" and that (2) she "was fired because of that conduct." *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661. Makela asserts that she engaged in protected conduct when she refused to certify ineligible patients and thereby prevented Apex from fraudulently billing the federal government for services in connection with ineligible patients, and that Apex terminated her because of this protected conduct. (Dkt. 1 ¶¶ 19, 21–24, 41, 51). Apex argues that Makela fails to allege facts that permit an inference that she engaged in protected activity and that Apex fired her because of the alleged protected activity. (Dkt. 14 at 3–8).

5

### a. Protected Conduct

An employee engages in protected conduct when she takes "lawful acts . . . in furtherance of . . . efforts to stop" a violation of the statute. 31 U.S.C. § 3070(h)(1). Acts that may be "in furtherance of . . . efforts to stop" FCA violations include reporting or complaining of suspected misconduct to supervisors, internally investigating suspected misconduct, voicing concerns about noncompliance with a company's legal obligations, or other actions intended and reasonably expected to prevent suspected misconduct. *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661; *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 848 (7th Cir. 2012); *see United States ex rel. Zverev v. USA Vein Clinics of Chicago, LLC*, 244 F. Supp. 3d 737, 749 (N.D. Ill. 2017); *see Glasper v. St. James Wellness Rehab & Villas, LLC*, 2023 WL 5830684, at *10 (N.D. Ill. Sept. 8, 2023); *see United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 96 (2d Cir. 2017); *see Singletary v. Howard Univ.*, 939 F.3d 287, 296 (D.C. Cir. 2019). And notably, a "refusal to engage in [a] fraudulent scheme, which . . . was intended and reasonably could be expected to prevent the submission of a false claim to the government, can [also] constitute protected activity under the statute." *Am. Med. Response, Inc.*, 865 F.3d at 96 (holding that a doctor's refusal to falsify a patient care report can constitute protected activity because it was "plainly in furtherance of an effort to stop an FCA violation"). Furthermore, an employee must allege facts that permit the inference that at the time of the relevant acts, "(1) the employee in good faith believe[d], and (2) a reasonable employee in the same or similar circumstances might believe, that the employer [was] committing fraud against the government." *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661 (quoting *United States ex rel. Uhlig v. Fluor Corp.*, 839 F.3d 628, 635 (7th Cir. 2016)).

6

Here, Makela plausibly states that she engaged in protected conduct under § 3730(h). 31 U.S.C. § 3730(h). At the outset, Apex argues that Makela fails to plausibly state she engaged in protected conduct because she does not allege that she acted "in furtherance of an FCA enforcement action." (Dkt. 14 at 6). This contention grossly mischaracterizes § 3730(h), which, as amended in 2009, plainly defines protected activity as "lawful acts" taken "in furtherance of an action under this section[,]" e.g., an enforcement action, "*or other efforts to stop 1 or more violations of this subchapter*." 31 U.S.C. § 3730(h)(1) (emphasis added); *Halasa*, 690 F.3d at 847–48. As summarized above, protected conduct under § 3730(h) includes a broad range of acts intended and reasonably expected to prevent a suspected FCA violation, including internal investigations of suspected misconduct, reports or complaints of suspect misconduct, or refusing to falsify documents needed for a fraudulent scheme. *Halasa*, 690 F.3d at 848; *Am. Med. Response, Inc.*, 865 F.3d at 96.

Makela engaged in conduct intended and reasonably expected to prevent a suspected FCA violation by "repeatedly oppos[ing]" Apex's attempts to admit patients who were ineligible for hospice care under Medicare by "carefully reviewing the medical records to ensure that Apex was not submitting claims for payment for ineligible patient" and refusing to certify the eligibility of prospective patients who were ineligible for hospice care Medicare according to federal law. (Dkt. 1 ¶¶ 21–22, 51). And because federal law required Makela, as medical director, to certify a patient's eligibility before Apex could submit a claim for payment to the federal government, Makela "was refusing to permit Apex to bill" the federal government for services that would have been provided to ineligible patients. (*Id.* at ¶ 19); 42 C.F.R. §§ 418.20, 418.22(a)(2), 418.22(c)(1)(i), 418.102.

7

Next, Makela plausibly states, and Apex does not contest, that she engaged in this conduct based on a "good faith belief" that Apex was attempting to submit fraudulent claims for payment to the federal government for services Apex sought to provide to ineligible patients. (*Id.* at ¶¶ 18–19); *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661. Furthermore, Makela plausibly states, and Apex does not meaningfully contest, that "a reasonable employee in the same or similar circumstances might believe, that the employer [was] committing fraud against the government." *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661. As medical director, federal law charged Makela with overseeing the "medical component of the hospice's patient care program," reviewing the medical information for each prospective hospice patient, and certifying prospective patients' eligibility for hospice care under Medicare. 42 C.F.R. §§ 418.102(b)–(c). In that role, Makela personally observed a pattern of repeated attempts to admit patients who, based on her review of their clinical information and her nearly two decades of experience practicing hospice care, were ineligible for hospice care under Medicare. (Dkt. 1 ¶¶ 18–21). These facts permit the inference that a reasonable employee in these circumstances might believe that Apex was committing fraud against the government. *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661.

Apex's primary submission is that Makela's factual allegations do not satisfy Rule 9(b)'s heightened pleading standard for fraud claims, (Dkt. 14 at 3–5), but as mentioned above, this standard does not apply to retaliation claims under § 3070(h). *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661–662. Apex's reliance on *Luckey v. Baxter Healthcare Corp.* is also misplaced because that case stands for the proposition—in the context of a fraud claim under § 3729, not a retaliation claim under § 3730—that a scientific dispute over the effectiveness of particular blood testing does not render false a lab's statement that it tested the blood it used to creates its products. 183 F.3d 730, 730–32 (7th Cir. 1999). And fraud is not an element of a retaliation claim under § 3730. *Univ.*

8

*of Chicago Med. Ctr.*, 44 F.4th at 661–662. Makela thus plausibly states that she engaged in protected conduct under § 3730. 31 U.S.C. § 3730(h)(1).

### b. Basis for Termination

To establish that she was plausibly fired because of her protected conduct, a former employee must allege facts that permit the inference that the employer "knew she was engaged in this protected conduct, and that [the employer] retaliated against her at least partially because of the protected conduct." *Lam v. Springs Window Fashions, LLC*, 37 F.4th 431, 437 (7th Cir. 2022) (citing *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004)). In arguing that Makela fails to plausibly state that she was terminated in retaliation for protected activity, Apex primarily reasserts its earlier contention that Makela did not plausibly state she engaged in protected activity because she does not make factual allegations sufficient to plead fraud under Rule 9(b)'s heightened pleading standard, which, again, does not apply to retaliation claims under § 3730. (Dkt. 14 at 8); *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661–662. And Apex's reliance on *Lang v. Northwestern Univ.* for the proposition that Makela did not engage in protected conduct under § 3730 because she did not have a reasonable belief that an action alleging false claims in violation of § 3729 could be legitimately filed is also misplaced. 472 F.3d 493, 494–95 (7th Cir. 2006). *Lang* interpreted the pre-amendment version of § 3730, under which protected conduct was limited to "lawful acts" taken "in furtherance of" litigation involving allegations of false claims under § 3729. *Id.* But again, as amended, § 3730 also defines protected conduct to include "other efforts to stop" FCA violations, beyond enforcement litigation. 31 U.S.C. § 3730(h)(1). Accordingly, § 3070 instead requires Makela to plead facts that permit the inference that "a reasonable employee in the same or similar circumstances might believe, that the employer [was]

9

committing fraud against the government." *Univ. of Chicago Med. Ctr.*, 44 F.4th at 661. And as the Court concludes above, Makela does so.

Left only with the bare contention that Makela's factual allegations are insufficient, Apex does not meaningfully contest whether Apex's decision to terminate Makela was motivated by the acts she alleges were protected conduct but only whether such acts constituted protected conduct. (Dkt. 14 at 8). Apex terminated Makela on March 22, 2024, which was 43 days after she started in the role and precipitously after she repeatedly opposed Apex's efforts to admit ineligible patients in March. (Dkt. 1 ¶¶ 6, 22, 24). The extremely close temporal proximity between Makela's protected activity and her termination is suspicious timing, which in combination with the relatively ambiguous statement that Makela was terminated because she was not a "good fit" with Apex's culture, (Dkt. 1 ¶ 22), reasonably permits the inference that Apex fired Makela "at least partially because of" her protected activity. *Lam*, 37 F.4th at 437; *see Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Furthermore, Makela's contention that she "carefully review[ed]" patients' medical records, viewed in the context of Makela's allegations that Apex repeatedly sought to admit ineligible patients, reasonably permits the inference that the other purported reason for Makela's termination—that she was "taking too long to review patient files"—was pretextual. (Dkt. 1 ¶¶ 18, 21); *Donahoe*, 667 F.3d at 860. Makela thus plausibly states that Apex terminated her because of her protected activity. Accordingly, the Court denies Apex's Motion to Dismiss with respect to Makela's retaliation claim under the FCA (Count III).

## II.     Breach of Contract (Count I)

Under Illinois law, "a breach of contract claim requires the existence of a valid and enforceable contract, performance by the plaintiff, a breach by the defendant, and a resulting injury to the plaintiff." *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, 119 F.4th 522, 525–

10

26 (7th Cir. 2024) (citing *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)). Apex argues that Makela "fails to plead sufficient allegations that [Makela] performed her obligations under the Agreement, that Apex breached its obligations under the Agreement, and that [Makela] suffered damages because of the alleged breach." (Dkt. 14 at 9). Apex's bare contentions are without merit.

First, Makela plausibly states that she performed her obligations under the employment agreement, including by maintaining her status as a licensed physician in good standing, carefully reviewing the medical records of each prospective hospice patient, and ensuring their eligibility under Medicare. (Dkt. 1 ¶¶ 17–18, 21; Ex. 1, Dkt. 1-1 ¶¶ 2.1–2.10 (Employment Agreement)); *see Petri v. Gatlin*, 997 F. Supp. 956, 965 (N.D. Ill. 1997).

Next, Makela plausibly states that Apex breached the employment agreement by "failing to provide [her] with proper notice of termination." (Dkt. 1 ¶ 28). In fact, Makela alleges that Apex gave her no notice of termination whatsoever, which Apex does not dispute. (Dkt. 1 ¶ 24). The employment agreement unambiguously required Apex to provide at least 90 days' notice prior to termination without cause and at least 30 days' notice prior to termination with cause. (Ex. 1, Dkt. 1-1 ¶ 4.3 (Employment Agreement)).

Finally, Makela plausibly states that she suffered damages because of the alleged breach by claiming she lost wages and employee benefits. *See Caparelli-Ruff v. Bd. of Educ. of E. Aurora Sch. Dist. 131*, 695 F. Supp. 3d 983, 990 (N.D. Ill. 2023). Because the employment agreement entitled Makela to at least 30 days' notice of termination (and up to 90 days' notice of termination if the termination was without cause), and because Makela received no notice of termination, Makela plausibly states that she is entitled to damages equivalent to the lost wages and employee benefits she would have received during the applicable termination period if Apex had performed

11

its obligation to provide her with notice of termination. *Royal's Reconditioning Corp. v. Royal*, 689 N.E.2d 327, 339–40 (Ill. App. Ct. 1997); *Kemnetz v. Elliott Farmers Grain Co.*, 482 N.E.2d 1076, 1078–80 (Ill. App. Ct. 1985). Accordingly, the Court denies Apex's Motion to Dismiss with respect to Makela's breach of claim under Illinois law (Count I).

### III. Illinois Wage Payment and Collection Act (Count II)

The IWPCA requires every employer "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3. By defining "wages" as "any compensation owed an employee by an employer pursuant to an employment contract[,]" 820 ILCA 115/2, the IWPCA "does not provide an independent right to payment of wages and benefits[,]" but "only enforces the terms of an existing contract or agreement." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012). To state a claim under IWPCA, a plaintiff must "plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005).

Makela alleges that under IWPCA, she is entitled to recover the remaining compensation owed to her under the employment agreement, which Apex violated by failed to provide her with 90 days' notice of termination. (Dkt. 1 ¶ 31–37). Apex's sole contention is that Makela fails to establish that she is entitled to compensation. (Dkt. 14 at 10). This argument fails, given the Court's determination above that Makela plausibly states a claim that Apex breached the employment agreement by failing to provide proper notice of termination and that Makela is entitled to lost wages and employment benefits. Makela thus plausibly states a claim that Apex violated the IWPCA by failing to pay Makela's wages that she is entitled to under the employment agreement.

12

Accordingly, the Court denies Apex's Motion to Dismiss with respect to Makela's IWPCA claim (Count II).

IV. **Retaliation Under the Illinois Whistleblower Act & Illinois Common Law (Counts IV & V)**

Section 20 of the IWA provides that "an [e]mployer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. To state a plausible retaliation claim under the IWA, "a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) his employer retaliated against him because of that refusal." *Sardiga v. N. Tr. Co.*, 948 N.E.2d 652, 657 (Ill. App. Ct. 2011); *Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 670 (7th Cir. 2008). Similarly, to state a plausible retaliatory discharge claim under Illinois common law, a plaintiff "must show that '(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy.' " *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 574 (7th Cir. 2022) (quoting *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009)).

In support of her retaliation claim under the IWA (Count IV) and retaliatory discharge claim under Illinois common law (Count V), Makela alleges that Apex terminated her because she refused to certify patients who were ineligible for hospice care under Medicare and in effect refused to allow Apex to bill the federal government for hospice care provided to ineligible patients in violation of federal regulations. (Dkt. 1 ¶¶ 19–23, 43–48, 50–54). With respect to Makela's IWA claim, Apex argues that Makela "fails to plead any facts related to her refusal to participate in an activity that would result in a violation of state or federal law, rules, or regulations" or facts

13

related to her termination. (Dkt. 14 at 11). With respect to Makela's retaliatory discharge claim under Illinois common law, Apex argues that Makela fails to plausibly establish she engaged in protected activity or that her termination violated a clear mandate of public policy. (Dkt. 14 at 11–12)

Apex's arguments are without merit. First, with respect to Makela's retaliation claim under the IWA (Count IV), Makela plainly "refused to engage in an activity that would result in a violation of a State or federal law, rule, or regulation" by refusing to certify ineligible patients who, she plausibly alleges, Apex sought to admit in violation of federal regulations. 740 ILCS 174/20. Furthermore, as the Court concludes in the context of Makela's FCA claims, the suspicious timing of her termination and the ambiguous, pretextual reasons offered for her termination reasonably permit an inference that Apex terminated Makela because of her refusal to engage in an activity that would result in a violation of federal regulations, namely the certification of patients who are ineligible for hospice care. *Sardiga*, 948 N.E.2d at 657; *Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 670 (7th Cir. 2008).

Second, with respect to Makela's retaliatory discharge claim under Illinois common law, Makela pleads facts, which, as the Court concludes above, reasonably permit an inference that a "causal relationship" exists between Makela's termination and her opposition to Apex's attempts to admit ineligible patients and refusal to certify ineligible patients. *Michael v. Precision All. Grp., LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014). Apex's termination of Makela violated the public policies of protecting whistleblowers from retaliation, being "truthful to the government when reporting medical billing codes to Medicare and Medicaid," and not "improperly admit[ting] patients" who are ineligible for hospice care, which are clearly mandated by the IWA, the FCA, and the federal regulations governing eligibility for hospice care under Medicare. (Dkt. 1 ¶¶ 50–51); *see Michael*,

21 N.E.3d at 1188 ("[A] review of Illinois case law reveals that retaliatory discharge actions have been allowed . . . where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.' "); *see Stiles v. Int'l BioResources, LLC*, 726 F. Supp. 2d 944, 947 (N.D. Ill. 2010) ("Under Illinois common law, the retaliatory-discharge tort is available to a person whose whistleblowing leads to the termination of his or her employment."); *see Roberts v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 135 N.E.3d 891, 896 (Ill. 2019) ("To succeed in a retaliatory discharge claim, the public policy alleged by a plaintiff must be found in the state or federal constitutions and statutes[.]"); *see Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 879 (Ill. 1981) (explaining that "actions for retaliatory discharge have been recognized where the employee was fired for refusing to violate a statute," such as where an employee refuses to falsify official reports or reports information of suspected criminal conduct to a government agency).

      Makela thus plausibly states a retaliation claim under the IWA (Count IV) and a retaliatory discharge claim under Illinois common law (Count V). Accordingly, the Court denies Apex's Motion to Dismiss with respect to Counts IV and V. Finally, because the Court denies Apex's Motion to Dismiss with respect to Makela's sole federal claim under the FCA (Count III), the Court does not reach Apex's contention that the Court should decline to exercise supplemental jurisdiction over Makela's state law claims. (Dkt. 14 at 13–14; Dkt. 18 at 8–9).

## CONCLUSION

For the reasons above, the Court denies Makela's Motion to Dismiss [14].

_____
Virginia M. Kendall
United States District Judge

Date: January 30, 2025